**SO ORDERED.**

**DONE and SIGNED April 25, 2023.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case Number: 21-10857 |
| | § | |
| Samuel Joseph Stevenson | § | Chapter 7 |
| Kasey Lynn Stevenson | § | |
| Debtors | § | |
| _____ | § | |
| John W. Luster, et al. | § | |
| Plaintiffs | § | Adversary Proceeding |
| | § | |
| vs. | § | Case No. 22AP-01010 |
| | § | |
| NEWREZ, LLC | § | |
| Defendant | § | |

**Memorandum Ruling**

The primary issue in this case is whether the trustee can avoid a mortgage due to its faulty land description.

The parties filed cross motions for summary judgment. Applying Louisiana law, this court concludes that the erroneous description enables third parties to locate and identify the property with certainty and is not misleading. That is all

that Louisiana law requires. Accordingly, the trustee cannot avoid the mortgage.

## Stipulated Facts

The material facts are not in dispute. The parties filed a joint stipulation of facts. Docs. 29, 30, 44.

On October 26, 2021, Samuel Joseph Stevenson and Kasey Lynn Stevenson (collectively "**Debtors**") filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Stipulation ¶ 13. Eleven years before their bankruptcy case was filed, Debtors acquired property from Marcia Bates Weaver in 2010. The property consisted of Lot 1 and a portion of Lot 2. ¶ 4. There is no dispute about the validity of the description for Lot 1. The dispute centers on the description for Lot 2.

When Ms. Weaver and her husband acquired their interest in a portion of Lot 2 in 2004, the deed correctly described their interest as follows:

> Lot Two (2) of the John Pierce Addition to the Town of Bienville, Bienville Parish, Louisiana, situated in SE/4 of NE/4, Section 28, Township 16 North, Range 6 West, as per plat and survey of said addition, *less and except* a tract described, as beginning at the Southeast corner of said Lot Two and run North 219 feet, thence run West, parallel with the South line of said Lot Two a distance of 209 feet, thence run South a distance of 219 feet to the South line of said Lot Two, thence run East along the South line a distance of 209 feet to the point of beginning.

The parties have referred to this description as "**Description A**." ¶ 2.

After Ms. Weaver's husband died, a judgment of possession was recorded in 2008 which placed her in possession of her husband's interest in a portion of Lot 2 using Description A. ¶ 3.

In 2010, Ms. Weaver conveyed property to Debtors. This is when the faulty

land description occurred. That deed described the portion of Lot 2 as follows:

> Lot Two (2) of the John Pierce Addition to the Town of Bienville, Bienville Parish, Louisiana, situated in SE/4 of NE/4, Section 28, Township 16 North, Range 6 West, as per plat and survey of said addition, *less and except* a tract described, as beginning at the Southeast corner of said Lot Two and run North 219 feet, thence run West, parallel with the South line of said Lot Two a distance of 209 feet, thence run South a distance of 209 feet, thence run South a distance of 219 feet to the South line. Bearing the Municipal Address: 25734 Highway 9, Bienville, Louisiana 71008. APN#0620021625.

The parties have referred to this description as "**Description B**." ¶ 4.

The difference between the correct and the incorrect description involves the last two calls of the "less and except" parcel. The correct version (Description A) describes the "less and except" parcel as having a rectangular shape, measuring 219 feet north-south by 209 east-west. The incorrect version (Description B) garbles the last two calls of the "less and except" area.

In 2014, Debtors borrowed money from Gibsland Bank & Trust ("**GBT**") and granted the bank a mortgage that correctly described Lot 1, but incorrectly described a portion of Lot 2. ¶ 5. The mortgage used Description B which was the same description for Lot 2 used in the 2010 Act of Sale. Debtors executed a note in connection with the 2014 transaction. ¶ 6. GBT later sold Debtors' note into the secondary market. ¶ 5. Newrez, LLC is the servicer for the current holder of the note and has authority to enforce the note in its own name. ¶ 5. The court will refer to the 2014 mortgage as the "**Newrez mortgage**."

Three years later, in 2017, Debtors borrowed additional money from GBT. ¶ 8. At that time, they executed a new mortgage to secure this debt. Unlike the

Newrez mortgage, GBT's 2017 mortgage used Description A to describe the portion of Lot 2 being encumbered instead of Description B. ¶ 8.

Despite the discrepancy in the legal descriptions, the parties agree that the bankruptcy estate includes the portion of Lot 2 described in Description A. *See*, Supplement Stipulation, ¶ 1.

## Conclusions of Law and Analysis

### I. Jurisdiction

This court has jurisdiction pursuant to 28 U.S.C. § 1334(b) and by virtue of the reference by the district court pursuant to 28 U.S.C. § 157(a) and LR 83.4.1. Venue is proper in this district. 28 U.S.C. §§ 1408 and 1409. This matter constitutes a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O).

### II. Summary Judgment Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

All facts and inferences considered pursuant to a motion for summary judgment must be construed in the light most favorable to the non-movant party. *See Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010). However, summary judgment cannot be defeated by conclusory allegations, unsupported assertions, or presentation of a mere scintilla of evidence. *See McFaul v. Valenzuela*, 684 F.3d 564,

571 (5th Cir. 2012).

### III. <u>Cross Motions for Summary Judgment</u>

The trustee and GBT are the plaintiffs in this proceeding. They assert that GBT's 2017 mortgage is the only valid mortgage that covers any portion of Lot 2. Newrez is the defendant. It contends that its mortgage covers the portion of Lot 2 described in Description A, even though it used Description B to describe the encumbered property. All parties filed cross motions for summary judgment.

When assessing cross motions for summary judgment, a court must rule on each motion on an individual and separate basis. *See White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005) (cross motions for summary judgment "are reviewed independently, with evidence and inferences taken in the light most favorable to the nonmoving party."). If there is no genuine issue of material fact and one party is entitled to prevail as a matter of law, a court will render judgment. *Martin Marietta Materials Sw., Ltd. v. St. Paul Guardian Ins. Co.,* 145 F. Supp. 2d 794, 795 (N.D. Tex. 2001) ("[W]here both parties have filed cross motions and neither disputes the material facts, summary judgment is particularly appropriate.").

### IV. <u>Plaintiffs' Motion for Summary Judgment</u>

Plaintiffs seek to avoid the Newrez mortgage on two grounds. First, they assert that the land description in the mortgage is inadequate and therefore unenforceable against third parties. Second, they assert there is no evidence that Newrez is owed a debt secured by the mortgage.

The trustee and GBT seek to avoid the Newrez mortgage using the so-called strong-arm provision of the Bankruptcy Code. That provision vests the trustee with the rights of a bona fide purchaser of the debtor's real property as of the commencement of the case. 11 U.S.C. § 544(a)(3). While the trustee has standing under this provision, GBT does not. *In re Cooper*, 405 B.R. 801, 807 (Bankr. N.D. Tex. 2009) ("[I]t is rather widely accepted that only the *trustee* (or debtor-in-possession in Chapter 11) has *independent* standing to pursue chapter 5 avoidance actions and other estate causes of action.") (Emphasis in original).

Section 544(a) provides in pertinent part that:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
...

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

"Section 544(a)(3) allows the avoidance of a transfer of real property that is not perfected and enforceable against a bona fide purchaser at the time the bankruptcy petition is filed." *Matter of Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997). "While the Bankruptcy Code creates the status of a hypothetical bona fide purchaser, state law defines that status." *Id*.

## A. Sufficiency of the Legal Description in the Mortgage

The parties agree that Louisiana law governs the enforceability of the

Newrez mortgage.

To determine whether the land description is sufficient under Louisiana law, the analysis starts with an examination of the Louisiana Civil Code which imposes certain requirements for every conventional mortgage:

> A contract of mortgage ***must state precisely the nature and situation of each of the immovables or other property over which it is granted***; state the amount of the obligation, or the maximum amount of the obligations that may be outstanding at any time and from time to time that the mortgage secures; and be signed by the mortgagor.

La. Civ. Code art. 3288 (Emphasis added).

In an unbroken line of cases for over a century, Louisiana courts have interpreted these requirements[1] to mean that "a conventional mortgage must substantially describe the mortgaged property. It must be reasonably accurate and full in itself, so far as to inform the public what property is covered." *Dawson v. Grezaffi*, 417 So.2d 450, 451 (La. App. 1st Cir. 1982), citing *State ex rel. Brisbois v. Recorder of Mortgages*, 1915, 13 Orleans App. 229, 232.

Even though article 3288 expressly provides that a mortgage "must state

---

[1] The requirements for a mortgage in Louisiana have been remarkably consistent for more than a century. Louisiana Civil Code article 3288 was part of a wholesale revision of the mortgage articles of the Civil Code that became effective in 1992. 1991 La. Acts, No. 652. The drafters of the 1992 revision used the language of Article 3306 of the Civil Code of 1870, which provided: "To render a conventional mortgage valid, it is necessary that the act establishing it shall state precisely the nature and situation of each of the immovables on which the mortgage is granted." The Revision Comments provide: "The language of the Article, taken alone, is perhaps somewhat misleading. There is a considerable body of jurisprudence interpreting the language and *the continuation of the exact wording of the former Article is intended to insure [sic] that this jurisprudence will continue to be authoritative in determining what kinds of descriptions are sufficient, both between the parties and as to third persons, to validly mortgage property*." La. Civil Code art. 3288, rev. cmt. (b) (Emphasis added).

precisely the nature and situation of each of the immovables," Louisiana courts have never required an error-free land description in a mortgage to be effective against third parties. Inaccurate property descriptions will suffice so long as they provide "sufficient notice" to enable a third party to locate and identify the property with certainty. *Voelkel v. Harrison*, 572 So.2d 724, 727 (La. App. 4th Cir. 1990), *writ denied,* 575 So.2d 391 (La. 1991) (collecting cases) ("The Louisiana Supreme Court has held that the description of real property in a mortgage or deed, although such description may be inaccurate or faulty, is sufficient to serve as notice to third parties dealing with that property if the description is adequate to enable the court to locate and identify the property with certainty, and if it is not so inaccurate or faulty as to be misleading.").

In Louisiana, "there is no bright-line rule for determining the sufficiency of a property description in a mortgage or deed…" *In re LeBlanc*, 604 B.R. 693, 700 (E.D. La. 2019). As the Louisiana Supreme Court noted, "Louisiana jurisprudence has not established precise criteria to determine what description in the public records is sufficient to place third persons on notice, and such determination is to be made on a case by case basis." *Quality Env't Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14), 144 So.3d 1011, 1020 (citations omitted). As a result, "each case of this nature must be decided in the light of its own peculiar facts and circumstances." *Wood v. Morvant*, 321 So.2d 914, 918 (La. App. 1st Cir. 1975).

Determining the sufficiency of a land description in a mortgage turns upon the application of the Louisiana public records doctrine. Codified at article 3338 of

the Louisiana Civil Code, "[t]he Louisiana public records doctrine generally expresses a public policy that an interest in real estate must be recorded in order to affect third persons." *McClain v. NMP, LLC*, 262 So.3d 409, 419 (La. App. 5th Cir. 2018). Under this doctrine, if a mortgage fails to sufficiently identify property in a way to enable third parties to locate it, it is not effective against them.

The Newrez mortgage identified the land using Description B, instead of Description A. The difference in the descriptions involves the last two calls of the "less and except" parcel. The correct version (Description A) describes it as having a rectangular shape, measuring 219 feet north-south by 209 east-west. The parallel sides of the rectangle are equal in distance.

The incorrect version (Description B) alters the last two calls of the "less and except" area. Description B contains erroneous distance and directional calls and fails to close. When drawn, the faulty calls result in a shape containing three sides, each with a different length, and a wide gap between the last call and the point of the beginning. There is no fourth side to make the property close. The shape resembles an open-ended rectangle but with one side much longer than the other.

The trustee argues that the land description in the Newrez mortgage is hopelessly defective because it does not close. Under Louisiana law, however, a land description is sufficient if the court can identify and locate the property from the mortgage itself or with the aid of extrinsic evidence appearing in the public records. *White v. Ouachita Nat. Gas Co.*, 177 La. 1052, 1059, 150 So. 15, 17 (1933) ("It suffices if the description be such as to enable the court to determine with certainty,

with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby.") (citations and quotation marks omitted). In determining the sufficiency of a land description, the court should look to the mortgage itself and other instruments filed in the property records. *In re Vezinot*, 20 B.R. 950, 954 (Bankr. W.D. La. 1982) ("Third persons searching the records for mortgages should not be bound to look beyond the mortgage records unless the mortgage itself refers to another recorded instrument.").

Newrez argues that the faulty description is sufficient for two reasons. First, it claims that third parties can identify and locate the "less and except" parcel by comparing the description in the mortgage with other instruments in the public record. Second, it argues that the description is sufficient to mortgage the property because it was the same description used to convey title to Debtors.

The court will address both arguments.

### 1. The Faulty Description Is Adequate to Enable the Property to Be Located With Certainty and Is Not Misleading

Debtors acquired the property from Ms. Weaver in 2010. When Ms. Weaver acquired her interests in the property in 2004 and 2008, both instruments included the correct description of the "less and except" parcel. The faulty description (Description B) merely carves out of Lot 2 the very same rectangle as does Description A. Both descriptions delete from Lot 2 its southern 219 feet, leaving only a rectangle at the northern end of the lot measuring 100 feet north-south by 209 feet east-west. By simply following the metes-and-bounds calls contained in the

"less and except" clause of Description B, a third party would have little trouble determining what part of Lot 2 was supposed to be encumbered by the Newrez mortgage. Moreover, Description B contains several references in the "less and except" calls to the "South line" of Lot 2 and cross references a recorded subdivision plat that enables one to determine the exact dimensions and location of the lot. These references further clarify that the "less and except" clause is intended to remove the southern portion of Lot 2 from the scope of the mortgage.

Accordingly, the court concludes that Description B is sufficient to notify third parties of the property that the Newrez mortgage intended to encumber.

### 2. The Identical Description Was Used In The Deed And Mortgage

The parties agree that Debtors acquired their interest in the property by a deed that used the *identical* faulty land description as the one used in the Newrez mortgage. They also *stipulated* that a portion of Lot 2 as described in Description A is property of the bankruptcy estate even though the deed used Description B.

A stipulation has the effect of a judicial admission. The question then is whether the stipulation in this case constitutes an admission that Description B – the one used in the deed and the mortgage - is sufficient to notify third parties of the precise location of the property described in Description A. It does.

The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, for Lot 2 to constitute estate property, Debtors had to own it. In Louisiana, an ownership interest in immovable property must be established in a manner prescribed by law,

such as a deed. To be translative of title, a deed is required to sufficiently identify the property intended to be sold. Therefore, when the parties stipulated that a portion of Lot 2 constitutes property of the estate, they *admitted* that the faulty description used in the deed was sufficient to enable third parties to identify the property with certainty. They had little choice but to reach such a stipulation, for otherwise the mortgages held by Newrez and GBT would not attach to any portion of Lot 2 and the trustee would not be able to administer the property.

Newrez argues that this admission is fatal to the trustee's case because if the land description is sufficient to convey title, it must also be sufficient to mortgage the identical property. As Newrez sees it, either Description B is insufficient and invalidates Debtors' 2010 acquisition deed and the Newrez mortgage, or Description B is sufficient and both the deed and mortgage are valid.

The trustee counters by noting that Louisiana courts and federal courts applying Louisiana law employ different rules of construction to determine the sufficiency of land descriptions used in conveyances and mortgages. *See*, *Quality Env't Processes, Inc. v. I.P. Petroleum Co.*, 2013-1582 (La. 5/7/14), 144 So. 3d 1011, 1021 ("Louisiana courts have been liberal in construing the description of property in deeds, so as to sustain, rather than defeat, the conveyance."); *In re LeBlanc*, 593 B.R. 734, 745 (Bankr. E.D. La. 2018), *aff'd and remanded,* 604 B.R. 693 (E.D. La. 2019) ("Under Louisiana law, security interests are strictly construed and disfavored."); *Ocwen Loan Servicing, LLC v. Porter*, 2018-0187 (La. App. 4th Cir. 5/23/18), 248 So.3d 491, 496 ("This Court has recognized that '[b]ecause of their very

nature and function, security devices should be strictly construed.'") (quoting *Durham v. First Guar. Bank of Hammond*, 331 So.2d 563, 564 (La. App. 1st Cir. 1976)).

In the trustee's view, the court should employ a strict construction of the land description and hold that it is insufficient because it does not close. The trustee argues that the description's failure to close means it fails to "state precisely the nature and situation of each of the immovables" as required by Louisiana Civil Code article 3288. Strict construction of a property description, however, does not require a finding of strict liability for errors contained in the description. The standards for determining the sufficiency of a description are more nuanced than the bright-line standards advocated by the trustee. Under Louisiana law, the issue is whether the property description used in the mortgage is sufficiently specific to place third parties on notice of what has been encumbered.

Regardless of whether the court liberally or strictly construes Description B, the trustee cannot escape the effect of his stipulation. It is fatal to his case. When the deed's land description was repeated in the Newrez mortgage, it did not suddenly become insufficient under Louisiana law merely because it was used in a mortgage instead of a conveyance deed.

The trustee is unable to point to a single case where a court found a faulty land description to be sufficient for purposes of a conveyance, yet insufficient when repeated in a mortgage. Perhaps that is because the rule of law embodies a sense of evenhandedness and avoids double standards. "After all, in the law, what is sauce

for the goose is normally sauce for the gander." *Heffernan v. City of Paterson, N.J.*, 578 U.S. 266, 272, 136 S. Ct. 1412, 1418, 194 L. Ed. 2d 508 (2016).

This court finds that, under the "peculiar facts and circumstances" of this case, *Wood*, 321 So.2d at 918, the property description in the Newrez mortgage is sufficient to give notice to third persons that it was intended to encumber Lot 2 using Description A.

### B. Underlying Obligation Owed to Newrez

In Louisiana, a mortgage is a right that is only accessory to an underlying obligation. La. Civ. Code art. 3282. In other words, a mortgage exists and can be enforced to the extent that the underlying obligation exists. *Id*. "Thus, if there is no underlying debt, there is likewise no valid mortgage." *LeBlanc*, 604 B.R. at 705.

In their reply brief, Plaintiffs argue, for the first time, that there is no evidence regarding the amount or validity of the obligation underlying the Newrez mortgage.[2] As a result, they argue that the mortgage is unenforceable. This theory was not alleged in the complaint. It was not asserted in Plaintiffs' motion. It was not argued in their original brief. It was raised solely in their reply brief.

---

[2] Newrez relied on Debtors' bankruptcy schedules to establish the underlying obligation. The schedules listed a debt owed to Newrez as $110,016.00. While the court may take judicial notice of the bankruptcy schedules under Fed. R. Evid. 201, the schedules constitute prior out-of-court statements which are inadmissible hearsay. *See* Fed. R. Evid. 801(c), 802. In cases such as this one, where a debtor is not a party to the adversary proceeding, the bankruptcy schedules are not admissible as an admission against the trustee. *Caplan v. B–Line, LLC (In re Kirkland),* 572 F.3d 838, 840 (10th Cir. 2009) (debtor's schedules "were of no evidentiary value against the Trustee"); *In re Burkett,* 329 B.R. 820, 829 (Bankr. S. D. Ohio 2005) ("Of course, a debtor's scheduling of a debt does not constitute an admission by the trustee...."); *In re Jorczak,* 314 B.R. 474, 482–83 (Bankr. D. Conn. 2004) (scheduling of a debt constitutes an admission which is binding upon the debtors but not the trustee).

According to the Fifth Circuit, "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)). It has also held that "district courts do not abuse their discretion when they disregard claims or theories of liability not present in the complaint and raised first in a motion opposing summary judgment." *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 F. App'x 200, 204 (5th Cir. 2012).

Accordingly, the court will disregard this theory.

## V. <u>Defendant's Motion for Summary Judgment</u>

Newrez is the defendant. It did not file a counterclaim. It did not seek any affirmative relief. Newrez would not bear the burden of proof at trial on any issue.

Newrez filed its own cross motion for summary judgment. Where the moving party does not bear the burden at trial—as is the case here—that party need only specify the basis for summary judgment and point to a lack of evidence concerning an essential element of the nonmoving party's case. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Newrez pointed out the absence of evidence concerning an essential element of the trustee's case. In fact, as set forth above, the joint summary judgment evidence does not support all essential elements of the trustee's case. Accordingly, Newrez's cross motion for summary judgment should be granted.

## Conclusion

The property description for Lot 2 in the Newrez mortgage is not misleading and is sufficient to create a valid conventional mortgage under Louisiana law. The trustee may not avoid the mortgage.

For the reasons stated, the court **DENIES** Plaintiffs' Amended Motion for Summary Judgment filed as Docket #41 and **GRANTS** Defendant's Motion for Summary Judgment filed as Docket #34.

The court will enter a separate order in accordance with this ruling.

###